### T. H. DAVIS v. THE STATE.

*No. 841.   Decided April 22nd, 1896.*

#### Murder—Provocation—Threats—Manslaughter.

On a trial for murder, where it appeared that deceased, upon being informed by his w'fe, who was the daughter of defendant, that defendant, her father, had, before their marriage, been endeavoring to have carnal intercourse with her, told defendant that he would give him five days to leave the country, and if he did not leave he would kill him.  Held: That such a threat afforded no provocation to reduce the killing from murder to manslaughter.

APPEAL from the District Court of Brazoria.   Tried below before Hon. T. S. REESE.

Appeal from a conviction for murder in the second degree; penalty, a term of ninety-nine years' imprisonment in the penitentiary.

The facts in substance show that some time prior to the homicide, the wife of the deceased who was the daughter of appellant, informed deceased that the appellant had repeatedly tried to get her to sleep with him, whereupon the deceased sent for the appellant and accused him of an attempt to debauch his wife, and demanded that the appellant leave the country within five days.   Appellant returned home very much worried about the matter, when his wife informed him that months before the deceased had accused her of having sexual intercourse with a negro, and also had accused one of their daughters with the same offense.   Whereupon the appellant armed himself and returned to the house of the deceased, arriving there about daylight in the morning, and called the deceased to the door, and shot him.   The court submitted a full and fair instruction on the law of manslaughter; and further, if the appellant sought the deceased for the purpose of having him retract the insulting language used concerning his wife and daughter, and that the deceased refused to do so, or repeated the language, this would constitute adequate cause.   There are no bills of exceptions in the record, but the appellant assigns as error the failure of the trial court to instruct the jury

that the threat of the deceased to kill him if he didn't leave the country in five days, should be taken into consideration in determining whether or not adequate cause existed.

[No brief for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at ninety-nine years in the penitentiary, and prosecutes this appeal. This is a peculiar case. Two motives appear in the record for the homicide: First, that the appellant had been endeavoring to have carnal intercourse with his daughter while a maid. This daughter afterwards became the wife of the deceased. She informed her husband (deceased) of the conduct of her father (defendant), whereupon the deceased stated to the appellant that he would give him five days in which to leave the country, and that if he did not do so he would kill him. If the testimony of Mrs. Williams (the daughter of appellant and wife of deceased) is to be believed, appellant, when charged with this conduct, at first denied it, but afterwards, in the same conversation, admitted it. The second motive for the homicide presented by the record is that the deceased had said that the wife and eldest daughter of the defendant had been sleeping with negroes. We are left in doubt from the testimony as to which provocation prompted the appellant to commit the homicide. It is shown that he told one of the witnesses that he had gone to the deceased and demanded a retraction, and, failing to obtain this, that he had shot him, shooting him twice. Now, we are not informed what he wanted the deceased to retract—whether statements in regard to him and his daughter (the wife of the deceased), or whether in regard to the conduct of his wife and eldest daughter in sleeping with negroes as charged by the deceased. If for the first, it was not such a legal provocation as to reduce the homicide to manslaughter. If for the second, this being the first meeting after he had been informed of the insulting language towards his wife and eldest daughter, it was a legal provocation, such as by statute might reduce the homicide to manslaughter. The court instructed the jury upon every phase of this case presented by the evidence. Murder in both degrees, and manslaughter arising from the hypothetical conduct and words towards a female relation, were submitted to the jury as favorably to the defendant as could be required under the facts of this case. In fact the charge of the court is an admirable application of the law to the case. Counsel for appellant objected to the charge, because it did not inform the jury that they could look to the threats made by the deceased in order to determine whether the provocation was sufficient. We do not agree with counsel in this contention. If provocation at all is in this case, as before stated, it was the insulting words in relation to the wife and eldest daughter of the de-

fendant. It was not by reason of any violence or threatened violence on the part of the deceased towards the appellant. How threats could figure in such a case we cannot perceive. The jury apparently gave a very severe punishment—ninety-nine years in the penitentiary for murder in the second degree. We account for this upon the hypothesis that they believed this matter pertaining to the insulting words attributed to the deceased in regard to the wife and eldest daughter of the defendant as sheer fabrication, and that the jury attributed the homicide to the other provocation alone, to-wit: that as he had been charged with, and as he had confessed to, attempts to have carnal knowledge of Mrs. Williams, his own daughter, and had been ordered to leave the country, he proposed to take the law in his own hands and kill the deceased. They evidently believed Mrs. Williams that he was guilty of such conduct, and upon this theory of the case we account for the apparently severe punishment. There are no bills of exception in the record. We have carefully read the statement of facts and the charge of the court, and find no error in the judgment. The judgment and sentence of the lower court is affirmed.

*Affirmed.*